GRIFFIN, Circuit Judge,
concurring in part and dissenting in part.
Although I agree that the record establishes the elements of evidence spoliation, I disagree with the majority’s holding that the district court abused its discretion by imposing the sanction of dismissal. Because I conclude that the district court did not abuse its discretion, I would affirm the district court’s judgment in its entirety. Accordingly, I respectfully dissent.
We review a district court’s decision to impose a sanction for evidence spoliation for an abuse of discretion. Beaven v. U.S. Dep’t of Justice, 622 F.3d 540, 553 (6th Cir.2010). “A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.” Gentek Bldg. Prods. v. Sherwirn-Williams Co., 491 F.3d 320, 333 (6th Cir.2007) (internal quotation marks omitted). We may reverse only if a review of the record leaves us with a definite and firm conviction that a clear error in judgment has been made. Id.
In the present case, the majority terms its decision to reverse the district court as “a close call.” In my view, such a characterization implicitly acknowledges that the district court did not make a “clear error in judgment” and thus did not abuse its discretion in its choice of a sanction. A “close call” is seldom, if ever, an abuse of discretion.
As part of its “inherent power to control the judicial process,” the district court has “broad discretion in crafting a proper sanction for spoliation.” Adkins v. Wolever, 554 F.3d 650, 652 (6th Cir.2009) (en banc) (internal quotation marks omitted). Because the sanction chosen “should serve both fairness and punitive functions,” its severity may correspond to the party’s culpability, “ranging from innocence through the degrees of negligence to intentionally.” Id. at 652-53 (internal quotation marks omitted). “[T]he fact-intensive inquiry into a party’s degree of fault is for *388 a district court.” Id. at 653 (internal quotation marks omitted). “[Dismissal] should be imposed only if the court concludes that the party’s failure to cooperate in discovery was willful, in bad faith, or due to its own fault.” Beil v. Lakewood Eng’g & Mfg. Co., 15 F.3d 546, 552 (6th Cir.1994). “A district court does not abuse its discretion in dismissing a case, even though other sanctions might be workable, if dismissal is supported on the facts.” Id. (internal quotation marks omitted).
In this case, the district court concluded that Byrd destroyed the glass stove top in bad faith:
[S]hortly after he was told that [Alpha Alliance] was interested in his oven and that it might send someone to his home to inspect it, [Byrd] took a shovel and turned his oven over, thereby causing its glass top range to shatter into pieces. [Byrd] thus consciously destroyed evidence known to be of particular interest to his insurer prior to the possible arrival of one of its investigators. [Byrd] did so notwithstanding his own awareness of the oven’s importance in determining the fire’s cause. [Byrd’s] conduct under these circumstances demonstrates his bad faith.
The district court found Byrd’s conduct “especially egregious given the already suspicious circumstances surrounding the fire — including, among other things, its close temporal proximity (one week) to when [Byrd] received notice of his bank’s intent to foreclose on his home.” The district court’s finding of bad faith was not clearly erroneous, as the majority acknowledges.
Nor did the district court misapply the law. Beaven is this court’s most recent ruling regarding sanctions for evidence spoliation, but its relevance here is limited because the sanction under review in that case was an adverse inference, not dismissal. Beaven, 622 F.3d at 553-556. Nonetheless, Beaven cited favorably to Silvestri v. Gen. Motors Corp., 271 F.3d 583 (4th Cir.2001), which offers us useful guidance in evaluating the propriety of a dismissal sanction:
[Dismissal] is usually justified only in circumstances of bad faith or other like action. But even when conduct is less culpable, dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case.... [T]he district court has discretion to fashion an appropriate sanction for conduct which abuses the judicial process.... [0]ut-right dismissal of a lawsuit ... is a particularly severe sanction, yet is within the court’s discretion.
[S]ometimes even the inadvertent, albeit negligent, loss of evidence will justify dismissal because of the resulting unfairness: The expansion of sanctions for the inadvertent loss of evidence recognizes that such physical evidence often is the most eloquent impartial “witness” to what really occurred, and further recognizes the resulting unfairness inherent in allowing a party to destroy evidence and then to benefit from that conduct or omission. In fashioning an appropriate sanction, ... courts have focused not only on the conduct of the spoliator but also on the prejudice resulting from the destruction of the evidence.
At bottom, to justify the harsh sanction of dismissal, the district court must consider both the spoliator’s conduct and the prejudice caused and be able to conclude either (1) that the spoliator’s conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator’s conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.
*389 Silvestri, 271 F.3d at 593 (internal quotation marks and citations omitted).
The majority holds that the district court’s dismissal sanction is improper under Silvestn. I disagree. The majority misreads Silvestri to justify dismissal “only when significant prejudice results from the evidence’s destruction.” The majority’s focus on prejudice is overly narrow because Silvestri identifies two circumstances justifying dismissal: (1) the plaintiff destroyed the evidence in bad faith; or (2) the destruction resulted in extraordinary prejudice to the defendant. Silvestri, 271 F.3d at 593. Significantly, the majority only takes issue with the district court’s finding of prejudice; it does not disagree with the district court’s culpability determination. (“That Byrd consciously destroyed the evidence is debatable, but not clearly erroneous.”). Because the district court did not clearly err in finding that Byrd acted in bad faith, dismissing the case was not an abuse of discretion. See Gentek Bldg. Prods., 491 F.3d at 333; Silvestri, 271 F.3d at 593; Beil, 15 F.3d at 552.
Further, the majority errs in concluding that Byrd’s destruction of the glass stove top was insufficiently prejudicial to warrant dismissal. The majority first reasons that “Alpha Alliance was unable to identify exactly why it was prejudiced by the destruction of the glass top.” However, if a party can identify exactly what evidence would show if it were available, then it is not truly “prejudiced” by its absence. The “prejudice” caused by destroyed evidence is the inability to determine information important to a claim or defense. As the majority acknowledges, “[t]he fire originated from the oven, and Byrd’s destruction of the glass top range impaired Alpha Alliance’s determination of the fire’s precise cause.” The fire investigator indicated in his report that “the fact that the glass top of the range was broken prior to my arrival ... makes it impossible for me to determine, to a conclusive degree of scientific certainty, what the specific initial ignition source for the fire might have been.” In a fire-loss claim, an insurer is obviously prejudiced if it cannot determine the fire’s cause because the defendant has destroyed the object from which the fire originated.
Second, the majority faults the fire investigator for failing to explain “how a heat resistant flat glass panel would show anything.” Yet the fire investigator explained: “unlike regular ranges, the only way to determine, on many occasions, if a fire originated due to a pot being left unattended on one of the eyes of the range, is to be able to carefully examine the glass top of the range, which will oftentimes exhibit melted debris, evidence where the glass has sustained unusually excessive temperatures or degradation.” In other words, although heat resistant, a preserved glass stove top could have revealed whether the fire originated by accident due to a pot being left unattended on one of the eyes of the range. Ruling out possible accidental causes of a fire is critically important to an insurer, such as Alpha Alliance, who has denied a fire-loss claim because of suspected arson and is faced with defending that position in court.
Third, the majority places great emphasis on the fire investigator’s observation of bum patterns that “were at least consistent with the possibility of accelerant,” which it says provides alternative “evidence from which [Alpha Alliance] could develop its case.” However, dismissal under Silvestn does not require a complete inability to defend, but a substantial impairment to the ability to defend, and again, only in cases where the spoliator’s conduct falls short of bad faith. Silvestri, 271 F.3d at 593 (“[T]he district court must *390 ... be able to conclude either (1) that the spoliator’s conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator’s conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.”).
The majority’s final criticism is that dismissal “is excessively harsh in light of other available options,” apparently unconvinced that the sanction chosen best serves both fairness and punitive functions. The fact that the majority might have imposed a different sanction in the first instance, however, does not make the district court’s chosen course an abuse of discretion. See Beil, 15 F.3d at 552 (“A district court does not abuse its discretion in dismissing a case, even though other sanctions might be workable, if dismissal is supported on the facts.”). Although I tend to agree that “an adverse instruction would have permitted Alpha Alliance to adequately defend itself,” the district court nonetheless acted within its broad discretion to craft a sanction that it believed served both fairness and punitive functions and corresponded to Byrd’s culpability. See Adkins, 554 F.3d at 652-53. The district court believed that a harsher sanction was necessary given Byrd’s “egregious conduct” and to “deter would-be spoliators from engaging in similar conduct in the future.” The district court’s reasoning is sound, supported by the record, and reflects a proper application of the law.
Because the district court did not make a clear error in judgment, it did not abuse its discretion in its choice of the sanction of dismissal. For this reason, I would affirm the district court’s judgment in its entirety-