NOT DESIGNATED FOR PUBLICATION

Nos. 116,898
117,586

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LENDINGTOOLS.COM. INC.,
*Appellee*,

v.

BANKERS' BANK OF KANSAS, N.A.,
*Defendant*,

and

THE BANKERS' BANK, N.A.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD and J. PATRICK WALTERS, judges. Opinion filed September 28, 2018. Affirmed in part, reversed in part, vacated in part, and remanded with directions.

*Lynn D. Preheim* and *Christina Joy Hansen*, of Stinson Leonard Street LLP, of Wichita, for appellant.

*Jay F. Fowler* and *Amy S. Lemley*, of Foulston Siefkin LLP, of Wichita, and *Daniel E. Lawrence*, *Stephen E. Robison*, *Charles E. Milsap*, and *Adam Burris*, of Fleeson, Gooing, Coulson & Kitch, LLC, of Wichita, for appellee.

Before GREEN, P.J., MCANANY and BRUNS, JJ.

PER CURIAM: These appeals are companions to case No. 116,382 arising out of an action brought by LendingTools.com, Inc. (LendingTools) against the Bankers' Bank of

Kansas, N.A. (BBOK) and The Bankers' Bank, N.A. for misappropriation of alleged trade secrets under the Kansas Uniform Trade Secrets Act, K.S.A. 60-3320 et seq.; civil conspiracy; and tortious interference with contract. Prior to trial, the district court granted summary judgment to the defendants on the tort claims and the jury returned a defense verdict on the misappropriation of trade secrets claim. After these appeals were filed, the BBOK resolved its differences with LendingTools and is no longer a party to this lawsuit.

On appeal, The Bankers' Bank contends that the district court erred in denying the motion for recovery of attorney fees filed pursuant to K.S.A. 60-3323. In addition, The Bankers' Bank contends that the district court erred in imposing sanctions against it for deleting recordings of telephone calls and for failing to preserve documents from its Secure File Transfer Site and Google Docs Site. The Bankers' Bank also maintains that the district court erred in denying its motions to reconsider the imposition of these sanctions. We conclude that the district court did not abuse its discretion in denying the motion for attorney fees under K.S.A. 60-3323. However, we reverse the district court's denials of the motions to reconsider and remand them to the district court for further proceedings. Finally, we deny LendingTools' motion for attorney fees on appeal.

FACTS

The underlying procedural and factual history is set forth in our opinion—also filed today—in LendingTools.com, Inc. v. The Bankers' Bank, case No. 116,382. In this opinion, we will focus on the facts relevant and material to the issues presented in these appeals. Moreover, we will address additional facts as necessary in the Analysis section of this opinion.

In a demand letter dated June 22, 2010, LendingTools' attorney alleged that The Bankers' Bank had breached the terms of a confidentiality agreement and had appropriated its trade secrets. The letter also requested that The Bankers' Bank

2

"not . . . dispose of or destroy any records that relate in any way to the subject matter [set forth in the letter]. This includes any written or electronic communications (including any backup or archive copies) between you and any third parties, including but not limited to Bankers['] Bank of Kansas, N.A., First National Bankers' Bankshares, and United Bankers' Bank, concerning [LendingTools] products or services."

After receiving the letter, the in-house attorney for The Bankers' Bank evidently advised its employees to provide her with any records that touched upon or concerned any of LendingTools' products or services. In addition, the in-house attorney sent a letter to LendingTools dated July 12, 2010, in which she stated that The Bankers' Bank did not "receive any substantive confidential information" from either LendingTools or any other entity referenced in the demand letter.

On May 20, 2011, LendingTools filed a petition in Sedgwick County against the BBOK, alleging breach of contract. Specifically, LendingTools asserted that the BBOK breached the Masters Services Agreement by violating a covenant not to compete and by disclosing confidential information to The Bankers' Bank. However, LendingTools did not name The Bankers' Bank as a defendant.

More than nine months later, on February 27, 2012, LendingTools filed an amended petition adding The Bankers' Bank as a defendant. In the amended petition, LendingTools initially asserted claims against The Bankers' Bank for breach of contract as a partner or joint venturer with BBOK, tortious interference with contract, misappropriation of trade secrets, and civil conspiracy. However, the tort claims asserted against The Bankers' Bank were dismissed before trial.

On December 18, 2013, LendingTools moved for sanctions against The Bankers' Bank pursuant to K.S.A. 60-237. In the motion, LendingTools asserted that The Bankers' Bank deliberately destroyed relevant emails and other documents related to the litigation. It appears that LendingTools' primary contention was that The Bankers' Bank had failed

3

to implement a litigation hold after receiving the demand letter in June 2010. In response to the motion, The Bankers' Bank argued that it did not have a legal duty to preserve the potential evidence, that LendingTools had failed to show prejudice, and that the circumstances presented did not warrant sanctions.

After the parties submitted briefs to address the burden of proof, the district court conducted an evidentiary hearing on the motion for sanctions over several days in May 2014. Much of the hearing focused on the opinion of one of LendingTools' expert witnesses, Lance Watson, who claimed that employees of The Bankers' Bank had manually deleted recordings of telephone calls from an electronic storage system on four occasions—(1) in August 2011; (2) in April 2012; (3) in December 2013; and (4) in March 2014. It appears that Watson's opinions were provided to The Bankers' Bank only eight days before the hearing.

Six days after receiving Watson's report, The Bankers' Bank provided LendingTools with a report from one of its expert witnesses, Robert Meekins, who opined that the deletion of the recordings of telephone calls from the electronic storage system was not targeted. Instead, it was Meekins' opinion that the deletions were performed in the regular course of business and were "consistent with an effort to create more room on the system." In particular, he opined that the recordings were deleted from the electronic system beginning with the oldest calls and moving forward to calls that are more recent.

At the sanctions hearing, LendingTools called Watson as a witness and he reiterated the opinions set forth in his report. In addition, the head of the Information Technology department at The Bankers' Bank, Brad Richardson, testified. According to Richardson, the recording system had malfunctioned in August 2011 and he manually deleted the oldest recordings to make room for new recordings. Although Richardson did

4

not recall any other manual deletions of recordings, he testified that if there were other manual deletions he would have performed them.

On May 6, 2014, Judge Patrick Walters announced his ruling from the bench. Although he found that The Bankers' Bank did not act in bad faith in deleting the recordings of the telephone calls, Judge Walters found that the actions of its representatives bordered on recklessness. In particular, he found that representatives of The Bankers' Bank "knew or should have known that the litigation hold should have commenced on the February 2012 date." He also found that the representatives of The Bankers' Bank "were negligent in their discovery responses to the detriment of [LendingTools]." In addition, after listening to the testimony of Watson and representatives of The Bankers' Bank, he found "that the deletion of those phone records was intentional." Finally, Judge Walters found that the recordings were "not lost due to routine and/or good faith operation of [The Bankers' Bank] electronic storage [system]."

Accordingly, Judge Walters concluded that sanctions were appropriate under K.S.A. 60-237. Specifically, he found that it would be appropriate to give the jury an adverse inference instruction or spoliation instruction at trial. Judge Walters also determined that LendingTools was entitled to an award of reasonable attorney fees and costs in an amount to be agreed upon by the parties or determined by the court at a later date. The district court ultimately journalized the ruling in an order filed on March 4, 2015. The order incorporated the ruling from the bench—a transcript of which was attached—by reference.

On June 15, 2015, LendingTools filed a motion for additional sanctions against The Bankers' Bank. In this motion, LendingTools asserted that it had discovered that The Bankers' Bank intentionally failed to preserve documents from its Secure File Transfer Site and Google Docs Site. Moreover, on June 24, 2015, The Bankers' Bank filed a motion for reconsideration of the district court's initial imposition of sanctions. And on

5

June 29, 2015, it filed a response to LendingTools' request for additional sanctions, in which it argued that most of the documents in question were not responsive to LendingTools' discovery requests, that its actions were reasonable in light of the large amount of documents that were produced, and that LendingTools was not prejudiced because the documents in question were produced as early as July 2013.

On July 17, 2015, Judge Walters held a hearing and status conference in which he considered The Bankers' Bank's motion to reconsider the previously imposed sanctions and LendingTools' motion for additional sanctions. In denying the motion to reconsider filed by The Bankers' Bank, Judge Walters simply indicated that he had previously heard the matter and would stand on his initial decision. In denying the motion for additional sanctions filed by LendingTools, Judge Walters did not state the reasons for his decision. Although no formal journal entry or order was filed, Judge Walters noted his ruling on a minute sheet that read: "Overruled for reasons stated on the record."

LendingTools subsequently requested that Judge Walters recuse himself from the case. After making an informal request by letter, LendingTools filed a formal motion for a change of judge on August 28, 2015, pursuant to K.S.A. 20-311d. Five days later, the district court reassigned this case from Judge Walters to Judge James R. Fleetwood. The reassignment rendered the motion for new judge moot.

At a hearing on January 5, 2016, Judge Fleetwood reconsidered the motion for additional sanctions. After considering the written submissions of the parties, the oral arguments of counsel, and reviewing the transcripts of earlier hearings, Judge Fleetwood found:

> "[I]t appears to me that the management of these storage sites and document sites was poorly done. The existence of them and the apparent contact of them is something that was discovered only through some laborious work done by attorneys and expert

witnesses in trying to do forensic efforts, and discovering the content of them. I will grant a sanction as to attorney fees and costs related in that forensic effort."

The district court subsequently journalized this ruling in a written order filed on May 23, 2016. In the order, Judge Fleetwood incorporated his bench ruling—a transcript of which was attached to the order—and concluded that "spoliation occurred with regard to The Bankers' Banks' Secure File Transfer Site and Google Docs Site. The Court finds no justification for that spoliation." The order also directed LendingTools to submit an application for the attorney fees and costs claimed related to the spoliation.

Nearly five years after the petition in this case was initially filed, a six-week jury trial commenced on February 16, 2016. After hearing the evidence, the jury returned a defense verdict on all counts on March 28, 2016. Specifically, the jury found that The Bankers' Bank did not misappropriate LendingTools' trade secret information nor did it find that The Bankers' Bank and the BBOK had entered into a joint venture or partnership that misappropriated LendingTools' trade secret information.

On June 2, 2016, The Bankers' Bank and the BBOK filed a joint motion for attorney fees under K.S.A. 60-3323, alleging that LendingTools had brought and maintained its trade secrets claim in bad faith. At a hearing held on July 14, 2016, Judge Fleetwood considered The Banks' Bank's June 24, 2016 reply supporting its previously filed motion to reverse sanctions award. After considering the arguments of counsel, Judge Fleetwood determined that there was no reason to set aside the ruling made by Judge Walters. In making this ruling, Judge Fleetwood stated:

"Counsel, one of the complications of this trial, obviously, is the fact that this has gone over—covering several years, and I've only had the opportunity to be involved in just really a few months of this case. I certainly would, if I had the opportunity, would like to have been involved from the beginning.

7

"That being said, I have not heard anything that would—that strongly encourages me to set aside the rulings that have been previously made on this matter by Judge Walters, nor have I heard anything that would change my initial impressions as quoted by Mr. Fowler in his arguments. Therefore, the motion that's been made and argued today is denied."

On August 3, 2016, Judge Fleetwood entered a sanction order relating to the motion for additional sanctions in which he required The Bankers' Bank to pay $109,222.25 in attorney fees and expenses. Although The Bankers' Bank agreed to the amount, it reserved its objection to the district court's imposition of sanctions. On August 8, 2016, The Bankers' Bank filed a motion requesting that Judge Fleetwood enter findings of fact and conclusions of law relating to his ruling to impose additional sanctions.

At a hearing held on September 21, 2016, Judge Fleetwood denied the motion for attorney fees filed by The Bankers' Bank and the BBOK. He found that LendingTools had come forward with sufficient evidence to proceed to trial on the issue of misappropriation of trade secrets. The district court journalized this ruling on November 17, 2016. Specifically, Judge Fleetwood held:

"Defendant's motion and oral arguments rely heavily upon the continuing assertion that the plaintiff has failed to appropriately identify the trade secret material subject to the Kansas Uniform Trade Secrets Act, K.S.A. 60-332[o] et seq. As stated on the record that matter has been fiercely and aggressively argued throughout the long history of this trial. The defendants have asserted their legal challenge to this claim multiple times and the court has overruled their challenge allowing the plaintiffs to pursue their claim. At no time has the court considered the claim to have been made or maintained in bad faith. The court refuses to do so now.

"The defendants' joint motion is denied."

Also on November 17, 2016, Judge Fleetwood issued findings in support of its ruling on the motion for additional sanctions.

8

*Recovery of Attorney Fees under K.S.A. 60-3323*

The Bankers' Bank contends that it is entitled to recover attorney fees from LendingTools under the Kansas Uniform Trade Secrets Act, K.S.A. 60-3320 et seq. In particular, The Bankers' Bank seeks to recover attorney fees under subsection (i) of K.S.A. 60-3323. This statute provides: "If (i) a claim of misappropriation is made in bad faith, (ii) a motion to terminate an injunction is made or resisted in bad faith, or (iii) willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." K.S.A. 60-3323.

In Kansas, a court may not award attorney fees absent statutory authority or an agreement by the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). Here, we find as a matter of law that the district court had the statutory authority to grant attorney fees under K.S.A. 60-3323. As such, we review the district court's decision under the abuse of discretion standard. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 81, 350 P.3d 1071 (2015); *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013). A judicial action constitutes an abuse of discretion if the action is arbitrary, fanciful, or unreasonable; based on an error of law; or based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

It is important to recognize that K.S.A. 60-3323 is identical to § 4 of the Uniform Trade Secrets Act (UTSA), 14 U.L.A. § 4, p. 642. See *ICE Corp. v. Hamilton Sundstrand Corp.*, 432 F. Appx. 732, 741 (10th Cir. 2011) (unpublished opinion). The official comment to § 4 of UTSA states that this provision "allows a court to award reasonable attorney fees to a prevailing party in specified circumstances *as a deterrent to specious claims of misappropriation*, to specious efforts by a misappropriator to terminate

9

injunctive relief, and to willful and malicious misappropriation." (Emphasis added.) 14 U.L.A. Trade Secrets §4, Comment p. 642.

Although the Kansas Uniform Trade Secrets Act does not define the term "bad faith" and Kansas appellate courts have not interpreted K.S.A. 60-3323, we find guidance from cases decided in other jurisdictions that have adopted the Uniform Trade Secrets Act. In particular, we note that California appellate courts had found that the party seeking attorney fees for a misappropriation of a trade secret claim made in bad faith must show: (1) objective speciousness of the claim, and (2) subjective bad faith in bringing or maintaining the action, i.e., for an improper purpose. *Gemini Aluminum Corp. v. California Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1262, 116 Cal. Rptr. 2d 358 (2002). Other courts have also similarly endorsed this two-part test. See *Krafft v. Downey*, 68 A. 3d 329, 333-34 (Pa. Super.) (2013); *Hill v. Best Medical Intern., Inc.*, No. 07-1709, 2011 WL 6749036, at *3-4 (W.D. Pa. 2011) (unpublished opinion).

In *Tank Connection, LLC v. Haight*, No. 6:13-CV-01392-JTM, 2016 WL 1732433, at *1 (D. Kan. 2016) (unpublished opinion), the United States District Court for the District of Kansas Judge J. Thomas Marten considered a motion for attorney fees under K.S.A. 60-3323. In doing so, Judge Marten noted that "Kansas state courts have not yet made clear what bad faith is in this context." 2016 WL 1732433, at *1. However, he also noted that K.S.A. 60-3327 provides that the Kansas Uniform Trade Secrets Act is to "be applied and construed to effectuate its general purpose to make the law with respect to the subject of this act among states enacting it." 2016 WL 1732433, at *1. Thus, Judge Marten concluded, "Kansas courts would likely adopt the prevailing two-part test identified by these other jurisdictions." 2016 WL 1732433, at *1.

We agree that an application of the two-part test is appropriate. Accordingly, we find that in order to recover attorney fees for bad faith under K.S.A. 60-3323, the movant must establish that the misappropriation claim is objectively specious and was

10

subjectively brought for an improper purpose. In other words, the movant must objectively show that "'there is a complete lack of evidence supporting Plaintiff's claims.'" *Contract Materials Processing v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 744 (D. Md. 2002) (quoting *Computer Econ., Inc. v. Gartner Group, Inc.*, No. 98-CV-0312, 1999 WL 33178020, at *6 [S.D. Cal. 1999] [unpublished opinion]). Additionally, the movant must show that the plaintiff subjectively knew that the claim was not valid and pursued it for an inappropriate purpose. See *Gemini Aluminum Corp.*, 95 Cal. App. 4th at 1263 (quoting *Knight v. City of Capitola*, 4 Cal. App. 4th 918, 932, 6 Cal. Rptr. 2d 874 [1992]).

Here, our review of the record confirms the district court's conclusion that there was sufficient evidence presented at trial to support sending LendingTools' claim of misappropriation of trade secrets to the jury. Although LendingTools' evidence in support of its claims may have been weak and convoluted, we do not find it to be objectively specious. Likewise, based on our review of the record, we do not find that The Bankers' Bank has shown that LendingTools brought it for an improper purpose. Simply because LendingTools may have wanted to deter customer departures and protect its business is not—in and of itself—sufficient to rise to the level of bad faith. Accordingly, we do not find that the district court abused its discretion or erred as a matter of law in denying the motion for attorney fees filed by The Bankers' Bank pursuant to K.S.A. 60-3323.

*Sanctions Relating to Deletion of Telephone Recordings*

The Bankers' Bank contends that the district court erred in sanctioning it for allegedly destroying telephone recordings kept on an electronic storage system. We utilize an abuse of discretion standard to review whether sanctions should be imposed under K.S.A. 60-237. *Schoenholz v. Hinzman*, 295 Kan. 786, 798, 289 P.3d 1155 (2012). As indicated in the previous section of this opinion, a judicial action constitutes an abuse

11

of discretion if the action is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *Northern Natural Gas Co.*, 296 Kan. at 935.

Although the Legislature amended subsection (e) in 2017, at all times relevant to these appeals, K.S.A. 2013 Supp. 60-237(e) provided:

> "Absent exceptional circumstances, a court may not impose sanctions under this article on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system."

Here, The Bankers' Bank argues that the district court abused its discretion because it had no legal duty to preserve the telephone recordings. It also argues that the deletion of the recordings from the electronic recording system was done in good faith as part of a routine procedure to make space available as additional calls were received. It further argues that the district court imposed sanctions based on the opinions of an expert witness for LendingTools that were later proven incorrect.

A party seeking sanctions for destruction of potential evidence must establish that "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 615-16 (S.D. Tex. 2010) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 [S.D.N.Y. 2003]).

In *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 894-96, 259 P.3d 676 (2011), the Kansas Supreme Court found that "there is no common-law duty to preserve evidence." See *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 215, 734 P.2d 1177 (1987). Although neither *Kimball* nor *Koplin* deal directly with the issue presented in this case, it is significant that there are currently no Kansas statutes, rules, or caselaw that

require a party to a lawsuit to preserve potential evidence. See *Ballai v. Kiewit Power Constructors, Co.*, No. 110,166, 2015 WL 423795, at *5-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 302 Kan. 1008 (2015). We pause to note that *Ballai* did not create new law but was simply a recognition of the current status of the law in Kansas based on prior cases from our Supreme Court as well as the lack of statutes or rules establishing a legal duty to preserve evidence. Nevertheless, a legal duty to preserve may still be established if it can be shown that a party knows or should know that the potential evidence is relevant to pending or future litigation. *Rimkus*, 688 F. Supp. 2d at 612 (quoting *John B. v. Goetz*, 531 F.3d 448, 459 [6th Cir. 2008]).

Based on our review of the record on appeal, we conclude that the district court made the appropriate findings in this case to establish a legal duty on the part of The Bankers' Bank to preserve the telephone recordings. Specifically, after hearing the evidence presented at the hearing on the motion for sanctions, the district court found that representatives of The Bankers' Bank "knew or should have known that the litigation hold should have commenced on the February 2012 date." We note that The Bankers' Bank was joined as a party to this action on February 27, 2012. Thus, although The Bankers' Bank may or may not have had a legal duty to preserve the telephone recordings prior to being joined as a party, there is substantial evidence in the record to support the district court's finding that it had a legal duty to do so once it was added as a defendant.

Likewise, we conclude that the district court made the necessary findings as required by K.S.A. 2013 Supp. 60-237(e) that was in effect at the time. The district court found that the recordings were "not lost due to routine and/or good faith operation of [The Bankers' Bank] electronic storage [system]." In addition, the district court found "that the deletion of those phone records was intentional" and resulted from conduct that was "either negligent or reckless." As The Bankers' Bank recognizes in its brief, a culpable state of mind may include negligence, gross negligence, recklessness, willful, or intentional conduct. See *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (a culpable

13

state of mind for a spoliation sanction can range "through the degrees of negligence to intentionality"). Thus, we do not find that the district court abused its discretion in deciding—on May 6, 2014—to impose sanctions against The Bankers' Bank relating to the destruction of telephone records.

The more difficult question is whether the district court erred in denying the motions to reconsider the imposition of sanctions. Appellate courts review a challenge to the district court's denial of a motion to reconsider for abuse of discretion. An abuse of discretion occurs when the district court takes an action based on an error of law, an error of fact, or an otherwise unreasonable decision. *AkesoGenX Corp. v. Zavala*, 55 Kan. App. 2d 22, 30-31, 407 P.3d 246 (2017), *rev. denied* 308 Kan. ___ (June 25, 2018).

In its motions, The Bankers' Bank asserted that the district court should reconsider imposing sanctions because Judge Walters based his initial decision on the opinion testimony of an expert witness that was later shown to be incorrect. It argued that after a "comprehensive investigation" of the electronic storage system, it was "discovered that there were no manual deletions after [The Bankers' Bank] was sued." Moreover, The Bankers' Bank argued that once it was named as a defendant, "the auto-purge function was responsible for all deletions after that." Accordingly, The Bankers' Bank suggested that the recordings were actually deleted in good faith as part of a routine business practice.

The record clearly reflects that Judge Walters' findings on May 6, 2014, were based—at least in part—on the opinion testimony offered by Watson. In announcing his decision from the bench, Judge Walters stated, "I make a finding that after I listened to Mr. Watson on the stand and reviewing his [declaration regarding the deletions] and the testimony of the officers of [The Bankers' Bank], I find that the deletion of those phone records was intentional." In turn, Judge Walters concluded that the records were "not lost

14

due to routine and/or good faith operation of [The Bankers' Bank] electronic storage [system]."

Judge Walters denied the first motion to reconsider filed by The Bankers' Bank at a status hearing held on July 17, 2015. In denying the motion, Judge Walters stated, "I have listened to all your arguments. I know I cut them short this afternoon, but I will give you my best—my best response to these." He then announced that the "motion to reconsider sanctions is overruled." Instead, he decided to stand by his previous decision.

Nearly a year later, on July 14, 2016, Judge Fleetwood also considered The Bankers' Bank's renewed motion to reconsider the sanctions imposed by Judge Walters relating to the deletion of the telephone recordings, which it called a motion to reverse sanctions award. After considering the arguments of counsel, he concluded that there was no reason to set aside the ruling made by Judge Walters. Specifically, he found:

> "Counsel, one of the complications of this trial, obviously, is the fact that this has gone over—covering several years, and I've only had the opportunity to be involved in just really a few months of this case. I certainly would, if I had the opportunity, would like to have been involved from the beginning.

> "That being said, I have not heard anything that would—that strongly encourages me to set aside the rulings that have been previously made on this matter by Judge Walters, nor have I heard anything that would change my initial impressions as quoted by Mr. Fowler in his arguments.

> "Therefore, the motion that's been made and argued today is denied."

Unfortunately, the basis for the denials of the motions to reconsider are unclear from the record. We find the issue presented in the motions to reconsider to be particularly significant in light of the requirements of the version of K.S.A. 60-237 that was in effect at the time. If the district court were to conclude after considering the

15

evidence presented by the parties that the telephone recordings were actually deleted "as a result of the routine, good-faith operation of an electronic information system," see K.S.A. 2014 Supp. 60-237(e), the imposition of sanctions would be inappropriate. Thus, we reverse the district court's denials of the motions to reconsider the imposition of sanctions for destroying telephone recordings and remand this issue to the district court for an evidentiary hearing.

*Sanctions Relating to Secure File Transfer Site and Google Docs Site*

The Bankers' Bank also contends that the district court erred in imposing sanctions for failure to preserve documents from its Secure File Transfer Site and Google Docs Site. Initially, Judge Walters denied LendingTools' motion for additional sanctions at a status conference held in July 2015. In denying the motion, Judge Walters did not state the reasons for his decision. Shortly thereafter, the district court reassigned this case to Judge James R. Fleetwood.

At a hearing on January 5, 2016, Judge Fleetwood reconsidered the motion for additional sanctions. After considering the written submissions of the parties, the oral arguments of counsel, and reviewing the transcripts of earlier hearings, Judge Fleetwood found:

> "[I]t appears to me that the management of these storage sites and document sites was poorly done. The existence of them and the apparent contact of them is something that was discovered only through some laborious work done by attorneys and expert witnesses in trying to do forensic efforts, and discovering the content of them. I will grant a sanction as to attorney fees and costs related in that forensic effort."

The district court subsequently journalized this ruling in a written order filed on May 23, 2016. In the order, Judge Fleetwood incorporated his bench ruling—a transcript of which was attached—and concluded that "spoliation occurred with regard to The

16

Bankers' Banks' Secure File Transfer Site and Google Docs Site. The Court finds no justification for that spoliation."

Although The Bankers' Bank faults Judge Fleetwood for reconsidering Judge Walters' denial of the motion for additional sanctions, it recognizes that a district court retains the authority to alter or amend its orders at any time before they become final judgments. See *McTaggert v. Liberty Mut. Ins.*, 267 Kan. 641, 645, 983 P.2d 852 (1999) ("a trial court retains control over its proceedings and has the power to correct errors or injustice until a final judgment is entered"); *Burrowwood Assocs., Inc. v. Safelite Glass Corp.*, 18 Kan. App. 2d 396, 398, 853 P.2d 1175 (1993) ("a trial judge may reverse himself or herself during the course of an action if he or she believes an incorrect ruling has been made"). Accordingly, we find that Judge Fleetwood acted within the scope of his authority to revisit the denial of the motion for additional sanctions.

As indicated above, we review the district court's decision on a motion for sanctions for abuse of discretion. *Schoenholz*, 295 Kan. at 798. Moreover, a party claiming spoliation of evidence must establish that "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Rimkus Consulting Group, Inc.*, 688 F. Supp. 2d at 615-16, (citing *Zubulake*, 220 F.R.D. at 220). A culpable state of mind for a spoliation sanction can range "through the degrees of negligence to intentionality." *Adkins*, 554 F.3d at 652.

Here, the district court concluded that "spoliation occurred with regard to The Bankers' Banks' Secure File Transfer Site and Google Docs Site" and found "no justification for that spoliation." However, the district court did not make the findings necessary to reach this conclusion. Simply because the management of these sites may

17

have been "poorly done" does not necessarily rise to the level of culpable conduct. Likewise, as The Bankers' Bank points out in its brief, it is questionable how much of the information is relevant or material to the claims asserted in this case.

Accordingly, we vacate the order imposing additional sanctions and remand to the district court for further proceedings on the motion for additional sanctions. Because this issue also deals with the alleged failure to preserve or produce electronically stored information, the district court should not only look to the elements required to establish spoliation but should also look to the requirements set forth in K.S.A. 2014 Supp. 60-237(e) that was in effect at the time the motion for additional sanctions was filed. Finally, it is important for the parties to remember that a district court should use sanctions in order to accomplish the objects of discovery rather than to punish. *City of Neodesha v. BP Corporation*, 50 Kan. App. 2d 731, 777, 334 P.3d 830 (2014), *rev. denied* 302 Kan. 1008 (2015).

*Motion for Attorney Fees on Appeal*

On June 22, 2018, LendingTools filed a motion for attorney fees incurred in defending The Banker's Bank's appeal. LendingTools claims it is entitled to attorney fees incurred in any appeal in a case where the trial court had the authority to award attorney fees. See Supreme Court Rule 7.07(b) (2018 Kan. S. Ct. R. 50). The Banker's Bank responded to the motion for attorney fees, arguing that LendingTools is not entitled to appellate attorney fees because there is no statute authorizing an award and no agreement between the parties allowing it. The Banker's Bank also argues that it is impossible to ascertain from the time entries submitted by LendingTools what portion of the fees LendingTools actually expended in relation to the sanctions issue.

A Kansas court may not award attorney fees unless there is an agreement between the parties or the court is authorized to do so by statute or court rule. Whether the court

has authority to award appellate attorney fees is a question of law. *Snider*, 297 Kan. at 162. LendingTools fails to cite any applicable statute under which the district court had the authority to award it attorney fees. The district court imposed an attorney fees award as a sanction for discovery violations. LendingTools has not asserted that it is entitled to attorney fees on appeal due to discovery violations. Moreover, the issue in this appeal was not concerning the amount of attorney fees but whether they should have been imposed.

Moreover, even if we could impose attorney fees, in the exercise of this court's discretion under Supreme Court Rule 7.07(b), we would deny LendingTools' request for attorney fees on appeal. As indicated above, there is no clear winner or loser in these appeals and the ultimate outcome of this case remains to be determined. Accordingly, we find that each party should be responsible for its own attorney fees and, as such, LendingTools' motion for attorney fees is hereby denied.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.